Antonio Cabrita MEALHA, Appellant,

v.

Edward J. SHAUGHNESSY, Appellee.

No. 147, Docket 23320.

United States Court of Appeals,
Second Circuit.

Argued Jan. 3, 1955.

Decided Feb. 23, 1955.

Nemeroff, Jelline, Danzig & Paley, New York City, Aaron L. Danzig, New York City, of counsel, for appellant.

J. Edward Lumbard, U. S. Atty., for Southern Dist. of N. Y., New York City, for appellee. Harold R. Tyler, Jr., Asst. U. S. Atty., Lester Friedman, Atty., Immigration and Naturalization Service, New York City, of counsel.

Before L. HAND and MEDINA, Circuit Judges, and DIMOCK, District Judge.

PER CURIAM.

This is an appeal from a judgment, summarily dismissing a petition filed under § 10 of the Administrative Procedure Act to review an order of the Board of Immigration Appeals, for the third time denying a motion for a rehearing on a warrant ordering the deportation of the plaintiff to Portugal. The following facts appeared without contradiction. The plaintiff is an alien seaman born in Portugal, who arrived at New Orleans on March 12, 1952, was admitted for a shore leave of 29 days, and overstayed his time. He was arrested on a warrant of deportation on July 23, 1952, was given a hearing on September 19, 1952, and, after being found deportable, was allowed a voluntary departure.[1]

By a series of applications to the Board of Immigration Appeals for review, he succeeded in putting this off for eighteen months, during which time he married and begot two children. He complains that at the hearing he was not represented by an attorney, and that he was examined through an unsworn interpreter, who was, however, an official of the Immigration and Naturalization Service. Further, that he did not understand the questions that the interpreter put to him, because they were not in Castilian Spanish with which alone he had any familiarity, and that very little.

■■ We pass the question whether § 10 of the Administrative Procedure Act, § 1009, Title 5 U.S.C.A. permits the review of an order of deportation entered before the Immigration Act of 1952, 8 U.S.C.A. § 1101 et seq., went into effect on December 24, 1952. Arguendo, we will assume that it does. We held long ago that it is not necessary in such proceedings that the interpreter should be sworn,[2] and the Regulations in existence at the time of the hearing, § 151(2) (h), C.F.R. 8, provided that any "employee of the Service" might act. The plaintiff argues that these decisions, and presumably the regulation as well, have been overruled by Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103; and that point also we will take in his favor arguendo, because the "operative facts" are not in dispute. In his reply affidavit he did indeed say that he had not understood the question, when he was asked whether he was not the person described in the certificate of his entry; but he nowhere denies that he was, and the certificate was itself competent and decisive. It left no issue to be decided, for it then appeared that he was deportable as an alien seaman who had overstayed his leave.[3] The argument appears to be that, once it was shown that

---

1. § 155 (c) (1), Title 8 U.S.Code, now 8 U.S.C.A. § 1254.

2. Lee Sim v. United States, 2 Cir., 218 F. 432; Jeung Bow v. United States, 2 Cir., 228 F. 868.

3. §§ 14, 15, Act of May 26, 1924, 43 Stat. L.162, now 8 U.S.C.A. § 1252.

at the hearing he was deprived of some right guaranteed by the Constitution, he became as of course entitled to another hearing; because no findings made at such a hearing may stand, and the district court is without power to substitute findings of its own. This misconceives the function of such constitutional rights. If their supposed invasion could in no way have contributed to elicit those facts on which the legality of his deportation depended, it is irrelevant. To hold otherwise would be to hold that he got a right of residence which the law denied him because he was denied the right to dispute what was incontestably proved by evidence adduced without any shadow of illegality.

■■ There remains only the complaint that he was deprived of the privilege of "preëxamination" given by §§ 142.1 and 142.2 of Regulations 8. The answer is that in September, 1952, when he was excluded, he was ineligible for that privilege. Concededly he was not within subdivisions (a) or (b) of § 142.1, for they applied only to aliens who had been within the United States for a year or more. Subdivision (c) did give the privilege in an "exceptionally meritorious case"; but there was not a syllable in the answering affidavit that even intimates the existence of anything that could have made his case "exceptionally meritorious," or indeed meritorious at all. Besides, § 142.2 lays down four conditions of eligibility for "preëxamination," of which the fourth is that the alien shall be able to obtain "the prompt issuance of an immigration visa * * * for permanent residence in the United States." It is true that the respondent's moving affidavit said nothing about the Portuguese quota, but his brief tells us that it has been filled for many years. The alien's affidavit did not suggest the contrary, and in any event it is a matter of public record of which we can take judicial notice.

■ The appeal is utterly without merit; and contains nothing to commend it to our sympathies except for the fact that, taking advantage of the delays that he secured, this man while here has begotten two children, whose nurture his deportation may very seriously impair. This result of his deplorable and irresponsible conduct we are powerless to prevent; and, so far as he is himself personally concerned, it would certainly not dispose us to make an exception, even though it were in our power to do so.

Judgment affirmed.