57 F.3d 1079
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Vivian VAN HOVEN, Petitioner,
v.
IMMIGRATION & NATURALIZATION SERVICE, Respondent.
 No. 93-70483.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1994.
Decided June 5, 1995.
 
 Before: TANG, REINHARDT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Petitioner Vivian Van Hoven appeals the Board of Immigration Appeals' ("BIA") refusal to grant her a voluntary departure. Van Hoven also appeals the BIA's finding that the Immigration Judge's ("IJ") refusal to grant her a continuance--when her counsel failed to show up at her initial deportation hearing--did not constitute an abuse of discretion. We have jurisdiction under 8 U.S.C. Sec. 1105a(a), and we affirm.
 
 I. BACKGROUND
 
 3
 Vivian Van Hoven is a 44 year old native and citizen of the Philippines. She entered the United States on March 25, 1987 as a conditional permanent resident based on her marriage to David Van Hoven, a United States citizen, on September 16, 1986. On May 3, 1989, the INS issued an Order to Show Cause ("OSC") to Van Hoven. The INS charged, inter alia, that Van Hoven had been previously married on January 18, 1965 to Rafael B. Aldana and that she failed to terminate her marriage to Aldana, resulting in a bigamous marriage to David Van Hoven and an invalid permanent residence status. The order also stated that petitioner was deportable under Sec. 241(a)(1) of the Immigration and Nationality Act ("Act") because she obtained her visa by fraud or willful misrepresentation of material fact in violation of Sec. 212(a)(19).
 
 
 4
 Van Hoven and her first counsel, John Lee, appeared before an immigration judge (IJ) at a telephonic hearing on July 27, 1989. A hearing on Van Hoven's deportation was scheduled for December 5, 1989. On December 5, both Van Hoven and John Lee failed to appear at the time of the hearing. The hearing started in the absence of Van Hoven and her attorney. The INS put on two witnesses to establish deportability.
 
 
 5
 About 25 minutes after commencement of the hearing, court personnel found Van Hoven and a friend outside the courtroom and brought them in. Van Hoven requested the Judge for a continuance because her attorney was out of town. The IJ denied the request.
 
 
 6
 INS counsel then called Van Hoven as an adverse witness. Van Hoven was shown a copy of her visa and she admitted she signed the document under oath. She then admitted she was born in August, 1948 and not August, 1952 as indicated on the form. She admitted she had actually been married twice, although she claimed on the form she had only been married once. She admitted she had not disclosed her two children on the form. Finally, she admitted she knew that each of those answers were false at the time she submitted her visa application.
 
 
 7
 The IJ rendered his decision on December 5, 1989. The IJ concluded that the INS had met its burden of proof and had established the factual allegations in the OSC. The IJ stated that Van Hoven is deportable because "I have found that the willful misrepresentation has occurred and fraud has been perpetrated upon the Government of the United States" and that, therefore, "I have not entertained an application for relief from deportation under Section 244(e) of the Act [the voluntary departure provision]."
 
 
 8
 Van Hoven appealed to the BIA on December 8, 1989. Van Hoven retained a new attorney for her BIA appeal, and her new attorney submitted new evidence and briefs to the BIA. The BIA considered the new evidence and the record on appeal, and denied Van Hoven's claim.
 
 
 9
 On appeal from the BIA's decision, Van Hoven raises two issues. She claims that the BIA abused its discretion in refusing to grant her a voluntary departure, and that the IJ's refusal to grant a continuance resulted in a denial of her right to counsel and was an abuse of discretion.
 
 II. Voluntary Departure
 
 10
 Because voluntary departure "is a privilege, not a right," we review the BIA's denial of voluntary departure "for an abuse of discretion." Villanueva-Franco v. INS, 802 F.2d 327, 329 (9th Cir. 1986). We find that the BIA did not abuse its discretion when it found that Van Hoven failed to qualify for voluntary departure.[1]
 
 
 11
 In order to qualify for voluntary departure, Van Hoven must first
 
 
 12
 establish to the satisfaction of the Attorney General that [s]he is, and has been, a person of good moral character for at least five years immediately preceding [her] application for voluntary departure ....
 
 
 13
 Section 244(e)(1), 8 U.S.C. & 1254(e)(1). Van Hoven does not satisfy this standard because
 
 
 14
 [n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is or was -- (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter ....
 
 
 15
 Section 101(f)(6), 8 U.S.C. & 1101(f)(6).
 
 
 16
 Here, Van Hoven gave false testimony in her visa application in order to enter the United States. The false testimony consists of three false claims on her visa application: (1) that she had been married only one time, (2) that she had no children, and (3) that she was born in 1952. These claims are false because Van Hoven was previously married to Rafael B. Aldana in the Philippines, and that marriage was not dissolved when she married David Van Hoven, a United States Citizen, on September 16, 1986. In addition, Van Hoven had two children in the Philippines. Finally, Van Hoven admitted to the IJ that her birthdate was 1948.
 
 
 17
 Van Hoven argues that she believed her first marriage was voidable because she was not yet sixteen when she married Aldana on January 18, 1965. She also argues that she believed her first marriage was rendered invalid because she was separated from Aldana for ten years. Thus, Van Hoven claims that she did not intend to commit fraud on the Government because she had a good faith belief that her first marriage was invalid.
 
 
 18
 Van Hoven's argument is meritless. Under settled case law "[t]he alien has the burden of proof to establish that [s]he is eligible for voluntary departure." Cuevas-Ortega v. INS, 588 F.2d 1274 (9th Cir. 1979). Second, Van Hoven was, in fact, at least sixteen at the time that she was married to Aldana because her real date of birth is 1948, not 1952. Third, it makes no difference whether she believed her first marriage became voidable because the question on the visa application asks how many times Van Hoven had been married. Fourth, whether her first marriage was valid or not is irrelevant to the fact that she lied about the existence of her two children and her date of birth. Van hoven admits that she made these misrepresentations knowing they were false. Van Hoven thus fails to satisfy the requirement that she has been a person of good moral character because she provided false testimony on her visa application. The BIA did not abuse its discretion in denying Van Hoven's application for a voluntary departure.[2]
 
 III. Denial of Continuance
 
 19
 The decision "'to grant or deny continuances is in the sound discretion of the trial judge...."' Baires v. INS, 856 F.2d 89 (9th Cir. 1988) (quoting Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir. 1985)). "We reverse when we conclude that the judge's actions constitute 'an abuse of discretion."' Id.
 
 
 20
 Van Hoven argues that the IJ's denial of her request for a continuance constituted an abuse of discretion because it violated her right to be represented by counsel.[3] We disagree. The IJ did not abuse his discretion because neither the IJ nor INS caused, in any way, Van Hoven's counsel to fail to appear. Indeed, Van Hoven's counsel failed to appear because he was in another state, even though both he and Van Hoven knew about Van Hoven's hearing on December 5, 1989.
 
 
 21
 Moreover, we find that the failure to have counsel present at the initial deportation hearing did not prejudice Van Hoven. In deportation proceedings, "the fifth amendment ... guarantee[s] aliens due process in [deportation] proceedings," aliens have a "statutory right to be represented by counsel of their choice." Baires v. INS, 856 F.2d 89, 90 (9th Cir. 1988). Both the fifth amendment claim and the statutory claim, however, require a showing of prejudice. See Colindres-Aguilar v. INS, 819 F.2d 259, 261 (9th Cir. 1987) (stating that the "finding of the denial of the right to counsel does not require that petitioner prevail. In due process challenges, there must be a showing of prejudice"); Castro-O'Ryan v. INS, 847 F.2d 1307, 1313 (9th Cir. 1988) (stating that "[w]e need not however reach the constitutional [due process] issue if we find that the statutory right [to counsel] was not waived and that failure to accord it prejudiced the petitioner") (emphasis added).
 
 
 22
 Here, Van Hoven cannot show she was prejudiced by the absence of her counsel at the deportation hearing. Van Hoven argues that
 
 
 23
 had [she] been represented by an attorney, she could have shown that she did not have the intent to commit fraud on the Government and that she believed in good faith that her marriage to her first husband was not valid. There was, therefore, the clear possibility that the Defendant would have received an Order of Voluntary Departure instead of an order of deportation.
 
 
 24
 As noted in Part II of this memorandum disposition, however, Van Hoven's good faith belief does not qualify her as a person of good moral character. In addition, whether she had a good faith belief that her first marriage was invalid is irrelevant to her material misrepresentation that she had no children and that her birthdate was 1952 rather than 1948. These admissions disqualify her for voluntary departure and "eliminate[] any possible defense with which [an] attorney could have assisted." Rios-Berrios v. INS, 776 F.2d at 863 n.* (citing Sumio Madokoro v. Del Guercio, 160 F.2d 164 (9th Cir.), cert. denied, 332 U.S. 764 (1947)).
 
 
 25
 Moreover, on her appeal to the BIA, Van Hoven was represented by counsel, and the counsel presented additional evidence on Van Hoven's behalf. The BIA accepted this new evidence on appeal, reviewed the record, made its findings, and wrote a seven page detailed decision in which it denied, inter alia, Van Hoven's application for a voluntary departure. In Elnager v. INS, 930 F.2d 784, 787 (9th Cir. 1991), the IJ applied the incorrect standard in rejecting petitioner's application for asylum. The court held, however, that because the BIA "has the power to conduct a de novo review of the record, to make its own findings, and independently to determine the legal sufficiency of the evidence ... the error made by the immigration judge in applying the standards may be rendered harmless." Id. (citations omitted). Similarly here, any error made by the IJ in refusing to grant a continuance was cured by the BIA's thorough review of the record and its acceptance of new evidence on appeal. Thus, Van Hoven's claim fails because she cannot show she suffered prejudice from the absence of counsel at her initial deportation hearing.
 
 
 26
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 27
 In considering a request for a continuance, an immigration judge should be sensitive to the particular circumstances that give rise to the request. Here, the immigration judge did not inquire into the reasons for the absence of Van Hoven's attorney nor did he consider the effect that counsel's unexpected absence may have had on Van Hoven's ability to participate in the proceedings. As a result, the immigration judge's decision to deny the request cannot be said to have resulted from the exercise of his "sound discretion". Baires v. INS, 856 F.2d 89 (9th Cir. 1988).
 
 
 28
 In my view, the record also makes plain that Van Hoven was prejudiced by the immigration judge's arbitrary denial of the continuance. With sufficient time to prepare her case, Van Hoven could have moved for voluntary departure and put forth evidence to support that motion. The majority does not dispute this point but contends that no prejudice resulted because Van Hoven presented additional evidence to the BIA which the board deemed insufficient to warrant granting her discretionary relief.
 
 
 29
 It is true that Van Hoven presented some additional evidence to the board on appeal. All of that additional evidence, however, was designed either to challenge the immigration judge's finding that Van Hoven was deportable or to demonstrate that Van Hoven was statutorily eligible for voluntary departure. None of it was presented in order to show that Van Hoven was entitled to voluntary departure in the Attorney General's exercise of her discretion. Indeed, Van Hoven never made any arguments to the BIA explaining why she deserved voluntary departure rather than deportation. Instead, Van Hoven simply informed the board that because her request for a continuance had been denied "she was not advised to request voluntary departure" before the immigration judge. She then contended in a motion to remand that because she was married to a United States citizen she was eligible for voluntary departure and that she should be given the opportunity to make her case for such discretionary relief before an immigration judge.
 
 
 30
 The BIA did not dispute Van Hoven's eligibility for voluntary departure in its decision denying her request for a remand. Instead, the Board concluded that as a matter of discretion Van Hoven was not entitled to that form of relief.
 
 
 31
 I cannot join the majority in concluding that the BIA's premature resolution of the question of whether Van Hoven deserved voluntary departure cures whatever prejudice may have resulted from the denial of the continuance. It is well settled that before ruling on a request for discretionary relief the BIA must weigh all the positive and negative equities. See De La Luz v. INS, 713 F.2d 545, 545 (9th Cir. 1983). Such a weighing can occur only after the petitioner has had an adequate opportunity to present her case for that relief. Here, as I have explained, Van Hoven had not even attempted to put forth her case when the BIA concluded that her showing was insufficient. As a result, the BIA did not even consider her argument on appeal here that she never intended to deceive the immigration authorities -- a fact that if proven would certainly be relevant to a determination regarding the appropriateness of granting her discretionary relief.
 
 
 32
 In short, the BIA should have remanded Van Hoven's case so that she could have presented her request for discretionary relief in an adequate manner. The Board certainly should not have rejected her request for that relief before she had even tried to make her case. The actions of both the immigration judge in denying the continuance and the BIA in prematurely denying her request for relief have effectively precluded Van Hoven from receiving a voluntary departure to which she may be entitled. Accordingly, I dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 We note that Van Hoven is initially deportable because, inter alia, she failed to remove her conditional entry status and lacked proper entry documents and labor certification. Van Hoven does not argue that she is not deportable as charged. Rather, she argues that even though she is deportable, she should not be deported because she qualifies for a voluntary departure
 
 
 [2]
 Van Hoven also argues that her case should be remanded to the IJ because no voluntary departure was requested at the deportation hearing due to the absence of her attorney. This argument is meritless for two reasons. First, the IJ did, in fact, consider whether to grant a voluntary departure at the deportation hearing, but decided not to entertain the action because of Van Hoven's willful misrepresentations. Second, the BIA also reviewed and denied Van Hoven's application for a voluntary departure. This court's review "is limited to the decision of the BIA, and the BIA has the power to conduct a de novo review of the record, to make its own findings, and independently to determine the legal sufficiency of the evidence." Elnager v. U.S.I.N.S., 930 F.2d 784, 787 (9th Cir. 1991)
 
 
 [3]
 It is settled case law that the immigration judge's "denial of a continuance" may result "in a denial of the alien's right to counsel." See, e.g., Baires v. INS, 856 F.2d 89, 91 (9th Cir. 1988); Rios-Berrios v. INS, 776 F.2d 859, 863 (9th Cir. 1985)